IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**BG, III, a minor, by and through**  PLAINTIFF
**his next friend and special guardian**
**Marion E. Grantham, Jr.**

NO. 4:16-CV-64-DMB-JMV

**V.**

**ROB BANKS, BRAD CARVER,**
**JERRY CARVER, LEE TAYLOR**
**CARROLL COUNTY**  DEFENDANTS

## OPINION AND ORDER

This civil rights action is before the Court on the motion for summary judgment filed by Rob Banks, Brad Carver, Jerry Carver, Lee Taylor and Carroll County. Doc. #50.

### I
### Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice*

*Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## II
## Relevant Facts and Procedural History

### A. Break-In at J.Z. George High School

On the evening of Sunday, November 17, 2013, someone broke into the field house at J.Z. George High School in Carroll County, Mississippi. Doc. #63 at ¶¶ 2–5.[1] The following day, November 18, 2013, the Carroll County Sheriff's Department received several complaints about the incidents. *Id*. at ¶ 2. Carroll County Deputy Sheriff Brad Carver prepared four reports that day detailing the complaints. *See* Doc. #63-5 at 9–15. Brad's[2] first report states:

> ON MONDAY 11-18-2013, TIM EILAND CALLED AND STATED SOMEONE STOLE HIS HONDA FOREMAN 4-WHEELER, FROM J.Z. GEORGE SCHOOL, HE LEAVES IT PARKED ON THE SCHOOL PROPERTY, AT THE FIELD HOUSE, FOR SCHOOL PURPOSES AND WHO EVER STOLE IT DID DONUTS ON THE FOOTBALL FIELD. JOEY CARPENTER THE PRINCIPAL AT J.Z. GEORGE STATED AFTER LOOKING AT THE FOOTAGE FROM THE CAMERA'S, HE NOTICED A INDIVIDUAL WALKING AROUND THE CAMPUS TRYING TO BREAK INTO THE BANDHALL AND GYM. THE INDIVIDUAL DID BREAK INTO THE CONCESSION STAND AND TOOK,

---

[1] Document #63 reflects that someone broke into the school's concession stand. The record is unclear as to whether the concession stand is part of the field house; however, the pleadings and other parts of the summary judgment record indicate that such is the case.

[2] To avoid confusion, Brad Carver and Jerry Carver will be referenced by their first names.

> A FIRE EXTINGUISHER, THEN USED IT TO SPRAY TWO DIFFERENT CAMERA LENS, AFTER LOOKING AT THE TAPE, I DEPUTY CARVER COULD TELL IT WAS A YOUNG MAN BY THE NAME OF [BG III]. SUBJECT WAS PICKED UP, AND BROUGHT TO THE SHERIFF'S DEPARTMENT FOR QUESTIONING. [BG III] ADMITTED TO EVERYTHING THAT HAPPENED. INCIDENT HAPPENED BETWEEN 22:00 HRS. AND 6:08 A.M. THE 4-WHEELER WAS FOUND PARKED BEHIND 4-K CONVENIENCE STORE. DAMAGE TO THE 4-WHEELER, UNKNOWN AT THIS TIME.

*Id*. at 9. The second report states:

> ON MONDAY 11-18-2013, CLAY HERBERT STATED SOMEONE STOLE HIS VEHICLE, WHILE PARKED OVERNIGHT AT 4-K CONVENIENCE STORE. VEHICLE WAS FOUND LATER AT J.Z. GEORGE HIGH SCHOOL FOOTBALL FIELD, OFF JEFFERSON ROAD IN NORTH CARROLLTON MS. VEHICLE WAS DAMAGED ALL OVER AND ALL FOUR TIRES WERE DAMAGED. AFTER LOOKING THROUGH HIS TRUCK, CLAY NOTICED HIS BOOK BAG WITH SEVERAL BOOKS IN IT AND HIS LAPTOP COMPUTER WAS MISSING. VEHICLE WAS TAKEN BETWEEN 5:20 A.M. AND 6:08 A.M.

*Id*. at 10. The third report, which appears to be a revised version of Brad's second report, states:

> ON MONDAY 11-18-2013, CLAY HERBERT STATED SOMEONE STOLE HIS VEHICLE WHILE PARKED OVERNIGHT AT 4-K CONVENIENCE STORE. VEHICLE WAS FOUND LATER AT J.Z. GEORGE HIGH SCHOOL FOOTBALL FIELD, OFF JEFFERSON ROAD IN CARROLLTON MS. VEHICLE WAS DAMAGED ALL OVER AND ALL FOUR TIRES DAMAGED. VEHICLE WAS TAKEN BETWEEN 5:20 A.M. AND 6:08 A.M.

*Id.* at 15. Finally, Brad's fourth report states:

> ON MONDAY 11-18-2013, J.Z. GEORGE CALLED AND STATED SOMEONE STOLE THERE HONDA FOREMAN 4-WHEELER, FROM OFF THE SCHOOL PROPERTY AND BROKE INTO THERE CONCESSION STAND. INCIDENT HAPPENED BETWEEN 22:00 HRS. AND 6:08 A.M. 4-WHEELER WAS FOUND PARKED BEHIND 4-K CONVENIENCE STORE. DAMAGE TO THE 4-WHEELER, UNKNOWN AT THIS TIME.

*Id.* at 13. Brad signed all four reports, which are all electronically dated "11-18-2013." *Id*. at 9, 10, 13, 15.

### B. Second Break-In and BG III's First Arrest

At approximately 4:00 p.m. on November 19, 2013, Deputy Sheriff Rob Banks asked Marion E. Grantham, Jr. ("Skipper"), BG III's guardian, to bring BG III to the Sheriff's Department for questioning about the November 17, 2013, break-in at J.Z. George High School. Doc. #59-1 at ¶¶ 3–4. Because Skipper and BG III were traveling at the time of the call, Skipper and Banks agreed to meet at approximately 2:00 p.m. the following day. *Id*. at ¶¶ 5–6.

After school on November 20, 2013, Skipper and Barbara L. Grantham, Skipper's wife, brought BG III to the Sheriff's Department to meet with Banks. *Id*. at ¶¶ 6–7. At the meeting, Banks read BG III a juvenile statement of rights and "informed him that he was being charged with certain felony crimes." *Id*. at ¶ 8. BG III admitted to committing the November 17, 2013, break-in. *Id*. at ¶¶ 3, 9. Banks then informed Skipper, Barbara, and BG III that he would prepare a report and send it to Kathy P. Jones, the Youth Court Counselor. *Id*. at ¶ 10. Banks released BG III to the custody of Skipper and Barbara. *Id*.

After the meeting, Banks prepared a "Juvenile Arrest Report" stating that BG III was arrested on November 20, 2013, for "Burglary of building, 2 cts motor vehicle theft." Doc. #63-5 at 11. Banks' report states, among other things:

> The suspect stated he left home because he was mad about his phone being taken away. He said he went to the school, broke the shelf off the concession stand window, went in the window and took a fire extinguisher that he later used to spray on the video cameras. He also admitted to taking the four wheeler from the school and riding around on it for a few hours, including rutting up the football field. He said he later took the four wheeler and left it at 4-k where he took a ford explorer and drove it around for several hours. He said he left the vehicle parked at J.Z. George at about 7 am and walked back home.

*Id.* at 11.

The evening of November 20, 2013, there was a second break-in at J.Z. George High School's field house. *See* Doc. #63 at ¶ 12; Doc. #1 at ¶ XI.

## C. BG III's Second Arrest

On Thursday, November 21, 2013, Judge Edward C. Fenwick of the Youth Court of Carroll County issued an "Order for Transportation and Temporary Detention," stating that the Youth Court "has been informed that [BG III] ... is charged with burglary and the Court therefore finds that the sheriff of Carroll County should take custody of the child and transport him to the Leflore County Juvenile Detention Center …." Doc. #63-5 at 25. With the order in hand, Banks and Brad arrested BG III at Carroll Academy, BG III's school, during regular school hours. Doc. #63-6 at ¶ 12; Doc. #59-1 at ¶ 12. According to Brad and Banks, "[t]he arrest was made solely based on the requirements of the Court documents, which were issued from a Youth Court Judge … for crimes BG III committed and confessed to committing ...." Doc. #63 at ¶ 11; Doc. #63-6 at ¶ 12.

After the school notified Skipper that BG III had been arrested, Skipper called Banks and asked "what was going on." Doc. #59-1 at ¶ 14. Banks "responded that [BG III] was a suspect in another break in of the field house ... which had occurred on Wednesday evening, November 20, 2013." *Id.* at ¶ 15. Skipper then called Sheriff Jerry Carver, who responded that Deputy Sheriff Lee Taylor had reviewed video of the second break-in and "assumed" that BG III was the perpetrator. *Id.* at ¶¶ 16–17. Skipper informed Jerry that BG III "could not have done that of which he was accused because he was at church on Wednesday evening and later on that evening [was] with a friend." *Id.* at ¶ 18.

Skipper and Barbara met Banks and BG III outside the Leflore County Juvenile Detention Center. *Id.* at ¶¶ 19–20. When Skipper asked Banks why BG III was being detained, Banks responded that someone broke into the school again last night, Taylor had reviewed the surveillance video, and Taylor assumed BG III was the perpetrator "because of the manner the

5

perpetrator was walking on the video." *Id*. at ¶¶ 24–25.

On Friday, November 22, 2013, *The Greenwood Commonwealth* published an article about both break-ins on its front page with the headline, "Teen accused of breaking into school twice." Doc. #59-3. After detailing the first break-in, the article stated:

> On Wednesday night, the field house was broken into again, but that time the alarm was set, and the intruder left when the loud horn siren went off, [Principal] Ferguson said.
>
> After film evidence was reviewed, the same juvenile was arrested again, and Prosecuting Attorney Lori Bell took the case to Chancery Judge Edward Fenwick, who ordered that the juvenile be picked up and placed in juvenile detention until a hearing.
>
> Carver said the juvenile has denied the second break-in but admitted to the first.
>
> Fenwick will set a hearing date for the juvenile, likely by early next week, Carver said.

Doc. #59-3.

On November 25, 2013, BG III was released from detention.[3] Doc. #63-6 at ¶ 12. The same day, Prosecuting Attorney Lori Bell submitted a petition to the Youth Court charging BG III with two counts of burglary, two counts of motor vehicle theft, and one count of malicious mischief for the events surrounding the November 17, 2013, break-in. Doc. #63-5 at 6–8. Also that day, Judge Fenwick, after reviewing Bell's petition, ordered that a "Formal Petition" be issued for each count. *Id*. at 3–5.

### D. This Action

On March 31, 2016, BG III filed a complaint in this Court against Banks in his individual capacity; Brad in his individual capacity; Jerry, in his individual and official capacities; Taylor in

---

[3] The date of his release is not clearly stated in the record. According to Banks, BG III was detained for "approximately four (4) days." Doc. #63-6 at ¶ 12. BG III asserts, and the defendants do not dispute, that the release occurred on November 25, 2013.

his individual capacity; and Carroll County. Doc. #1. BG III alleges various state law claims against the defendants and, through the vehicle of 42 U.S.C. § 1983, alleges federal claims against each defendant based on the alleged deprivation of his constitutional rights.[4] *Id*.

On December 21, 2016, the defendants filed a motion seeking summary judgment on all claims, costs, a final judgment, and consideration of attorney's fees under 42 U.S.C. § 1988 upon entry of final judgment. Doc. #50; Doc. #51. BG III responded on January 13, 2017, Doc. #59, and the defendants replied on January 19, 2017, Doc. #61.

## III
## Analysis

In seeking summary judgment, the defendants argue that: (1) BG III's § 1983 claims must fail because there is no underlying constitutional violation and because the individual defendants are entitled to qualified immunity; and (2) the Mississippi Torts Claims Act bars BG III's state law claims.

### A. § 1983 Claims

42 U.S.C. § 1983 provides a cause of action to a plaintiff who was deprived of a federally protected right by a defendant acting under color of state law. "To establish a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Pratt v. Harris Cty.*, 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks omitted). To satisfy the second prong, "[a] Section 1983 claimant must

---

[4] BG III alleges eight counts: (1) "violation of civil rights pursuant to Title 42 U.S.C. § 1983 (general allegations);" (2) "false arrest and false imprisonment;" (3) "conspiracy;" (4) "negligent supervision;" (5) "failure to implement appropriate policies, customs and practices;" (6) "violation of civil rights pursuant to Title 42 U.S.C. § 1983 (failure to implement appropriate policies, customs and practices);" (7) "violation of civil rights pursuant to Title 42 U.S.C. § 1983 (4th Amendment and 14th Amendment);" and (8) "violation of civil rights pursuant to Title 42 U.S.C. § 1983 (4th Amendment and 14th Amendment)."

establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *Jones v. Lowndes Cty.*, 678 F.3d 344, 349 (5th Cir. 2012) (internal quotation marks omitted). Because the lack of an underlying violation is determinative of all § 1983 claims, where, as here, a plaintiff brings claims premised on direct and supervisory liability, a court should first address the claims premised on direct liability. *See Pratt*, 822 F.3d at 180, 185 n.7.

### 1. § 1983 claims against Banks and Brad Carver

In seeking summary judgment, Banks and Brad argue they are entitled to qualified immunity.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lytle v. Bexar Cty.*, 560 F.3d 404, 409 (5th Cir. 2009) (internal quotation marks omitted). "To determine whether a government official is entitled to qualified immunity for an alleged constitutional violation, [courts] conduct the two-step analysis of *Saucier v. Katz*, 533 U.S. 194 (2001)." *Id.* (internal citations omitted). Under this approach, the Court first asks "the threshold constitutional violation question of whether, taking the facts in the light most favorable to the plaintiff, the officer's alleged conduct violated a constitutional right." *Id*. at 409–10 (internal quotation marks omitted). If there was no constitutional violation, the "inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Id*. at 410. If, however, the officer violated a constitutional right, the Court must "ask ... whether the right was clearly established at the time of the conduct." *Id*.

With regard to the first prong, BG III alleges in his complaint that his second arrest

violated:

> certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States including but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; and c) the right to be free from false arrest.

Doc. #1 at ¶ XXII.

In requesting summary judgment, the defendants argue that Banks and Brad had probable cause to arrest BG III. Doc. #51 at 11–12. They further argue that BG III's Fourteenth Amendment due process claims alleged in the complaint fail because these claims "were either subsumed by the Fourth Amendment or provided no more protection than the plaintiff's right to be free from unreasonable seizure under the Fourth Amendment." *Id.* at 8.

### a. Due process

The defendants argue that the Fourth Amendment's probable cause analysis controls instead of due process. *Id.* In his response, BG III seems to concede this point by focusing on the constitutional right to be free from arrests without probable cause.

"[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal quotation omitted). Accordingly, when a plaintiff asserts a liberty interest to be free from unlawful arrest alongside a Fourth Amendment false arrest claim, the former is subsumed by the latter. *C.H. II ex rel L.H. v. Rankin Cty. Sch. Dist.*, 415 F. App'x 541, 546 (5th Cir. 2011).

Since BG III's alleged liberty interest is freedom from unlawful arrest, it is subsumed within his Fourth Amendment claim. *Id.* Thus, to establish that the arrest violated BG III's

9

Fourth Amendment rights, BG III must demonstrate that there was no probable cause to support his arrest. *Haggerty v. Tex. S. Univ.,* 391 F.3d 653, 655 (5th Cir. 2004).

### b. Fourth Amendment

The defendants argue that BG III's Fourth Amendment claims fail because Banks and Brad had probable cause to arrest BG III. Doc. #51 at 11–12. BG III responds they arrested BG III for the second break-in, for which there was no probable cause. Doc. #60 at 13–14.

"As applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for *any* crime." *Good v. Curtis,* 601 F.3d 393, 401 (5th Cir. 2010) (emphasis added). Probable cause exists "when the totality of the facts and circumstances within [an official's] knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty,* 391 F.3d at 655–56.

In analyzing probable cause, the United States Supreme Court has made:

> clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."

*Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (internal citations omitted). Under this objective standard, even if the deputies arrested BG III for the second incident (or the second incident motivated the arrest), if facts were known to the deputies at the time of the arrest that provide probable cause for any crime, their actions were legally justified. *See id.* ("[H]is subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

At the time Brad and Banks arrested BG III, both were aware that BG III had confessed to the first break-in at the field house. Brad had viewed video of the break-in and recognized BG III. And, Banks was present when BG III confessed to the crimes at issue. Accordingly, when the deputies arrested BG III, they had probable cause to believe BG III had committed crimes. *Parks v. City of Oxford*, No. 3:11-cv-072, 2013 WL 123703, at *3 (N.D. Miss. Jan. 9, 2013) (finding probable cause to believe plaintiff violated law based on her admission). The arrest, therefore, was not in violation of BG III's constitutional rights. Summary judgment in favor of Banks and Brad must be granted on the § 1983 claims brought against them. *Lytle*, 560 F.3d at 409.[5]

### 2. § 1983 claims against Jerry Carver in his individual capacity and Taylor

BG III asserts § 1983 claims against Jerry Carver and Taylor based on an alleged failure to train and/or supervise.

A plaintiff may bring a § 1983 claim based on a municipal official's failure to adequately hire, train, or supervise employees if such failure amounts to deliberate indifference to the rights of others. *See Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (training and supervising); *see also Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (hiring). However, "a supervisor cannot be liable under § 1983, where … there is no underlying constitutional violation." *Montes v. Ransom*, 219 F. App'x 378, 381 (5th Cir. 2007) (citing *Rios v. City of Del Rio*, 444 F.3d 417, 425–26 (5th Cir. 2006)).

For the reasons discussed above, the Court concludes that BG III cannot show a predicate constitutional violation based on a lack of probable cause. Summary judgment in favor of Jerry

---

[5] Because Banks and Brad had probable cause to arrest BG III, the Court need not consider whether, as argued by the defendants, the independent intermediary doctrine insulates the deputies from liability.

11

and Taylor therefore must be granted on the § 1983 claim brought against them in their individual capacities. *Id*.

### 3. § 1983 claims against Carroll County and Jerry Carver in his official capacity

Section 1983 provides for liability against a municipality for causing a "constitutional tort, which occurs when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (internal quotation marks omitted). As with supervisory liability, "[a] municipality cannot be held liable under § 1983 if there is no underlying constitutional violation." *Hale v. Bexar Cty.*, 342 F. App'x 921, 925 (5th Cir. 2009) (citing *Rios*, 444 F.3d at 426). Because BG III cannot establish an underlying constitutional violation for lack of probable cause, Carroll County is entitled to summary judgment on this § 1983 claim. *Id*. For the same reason, summary judgment is also warranted on the claims against Jerry in his official capacity. *See Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 716 (N.D. Tex. 1998) ("Official capacity suits are another way of pleading an action against an entity of which an officer is an agent.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

### B. State Claims

Having determined that BG III's § 1983 claims must be dismissed, no federal question remains before the Court. In this situation, "the court must exercise its discretion whether to exercise supplemental jurisdiction." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (citing 28 U.S.C. § 1367(c)(3)). To this end, 28 U.S.C. § 1367, the supplemental jurisdiction statute, provides:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially

predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Courts in the Fifth Circuit treat the four circumstances enumerated in § 1367 as "statutory factors" to consider when evaluating supplemental jurisdiction. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011).

"When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. However, the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may refile his claims in the appropriate state court." *Bass*, 180 F.3d at 246 (internal citation and emphasis omitted).

In this case, the parties' summary judgment briefing on the state law claims is too cursory to allow the Court to determine whether the state law issues are novel or complex; accordingly, the first statutory factor is neutral. The second statutory factor weighs in favor of dismissal because the state law claims predominate over the now non-existent federal law claims. The third statutory factor weighs in favor of dismissal because the federal claim will be dismissed by this order.

The fourth factor, which incorporates the "common law factors of judicial economy, convenience, fairness, and comity,"[6] also favors dismissal, as the heavy balance of the common law factors weigh in favor of dismissal. Specifically, the judicial economy factor weighs in favor of dismissal because "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of resources, had been devoted to the ... consideration of

---

[6] *Enochs*, 641 F.3d at 159 ("The fourth factor also favors remand, as the heavy balance of the common law factors in favor of remand constitutes another compelling reason to decline jurisdiction.").

the ... state law claims (or to any claims)."[7] *Enochs*, 641 F.3d at 159. The third common law factor also weighs in favor of dismissal because there is no indication of prejudice resulting from dismissal and "it [is] certainly fair to have ... the purely ... state law claims heard in ... state court ...." *Id*. at 160. Finally, insofar as federal courts are "not as well equipped for determinations of state law as are state courts," the fourth common law factor of comity is served by dismissal. *Id*.; *see Diaz v. Estate of Lampton*, No. 3:09-cv-324, 2013 WL 3213087, at *16 (S. D. Miss. June 26, 2013) (dismissing state law claims "without prejudice so that a state court of competent jurisdiction may resolve them").

Upon consideration of the relevant factors, the Court will follow the Fifth Circuit's general rule and decline to exercise supplemental jurisdiction over the state law claims. Accordingly, the Court will dismiss without prejudice BG III's state claims.

### C. Costs and Attorney's Fees

In their motion, the defendants seek "costs assessed to the Plaintiff, and, ... [for] the Court [to] take up the matter of prevailing party attorney fees pursuant to 42 U.S.C. § 1988 upon entry of final judgment." Doc. # 50 at 2.

#### 1. Costs

Federal Rule of Civil Procedure 54 states that, absent a federal statute, the federal rules, or a court order providing otherwise, "costs ... should be allowed to the prevailing party." Fed. R. Civ. Proc. 54(d)(1). The defendants are the prevailing parties here. *Conwill v. Greenberg Traurig, L.L.P.*, 448 F. App'x 434, 436 (5th Cir. 2011) ("Defendants–Appellants were the prevailing parties in this action because they obtained a favorable final judgment dismissing the

---

[7] Aside from this order, the Court has issued only procedural orders. Doc. #7; Doc. #15; Doc. #27; Doc. #29; Doc. #32; Doc. #36; Doc. #39; Doc. #42; Doc. #52; Doc. #53; Doc. #55; Doc. #62.

federal claim with prejudice and the sole remaining state claim was dismissed without prejudice"). Accordingly, the Court will tax costs against BG III in the final judgment.

### 2. Fees

42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of section[] ... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." However, "[a] claim for attorney's fees and related nontaxable expenses must be made by motion …." Fed. R. Civ. Proc. 54(d)(2)(A). Accordingly, for the Court to "take up" the issue of attorney's fees, the defendants must file a proper motion under the rules. *Id*. Because they have not done so, their request for fees is denied.

## IV
## Conclusion

For the reasons above, the defendants' motion for summary judgment [50] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks summary judgment on BG III's § 1983 claims and costs. The motion is DENIED to the extent it seeks summary judgment on BG III's state law claims, and to the extent it asks the Court to "take up" the issue of attorney's fees. The § 1983 claims are **DISMISSED with prejudice** and the state law claims are **DISMISSED without prejudice.** A final judgment consistent with this opinion will issue separately.

**SO ORDERED**, this 7th day of July, 2017.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**